## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **HU-YU, INC. d/b/a CITY WOK,** individually and behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>**v.**<br><br>**ASR GROUP INTERNATIONAL, INC.; AMERICAN SUGAR REFINING, INC.; DOMINO FOODS, INC.; CARGILL, INCORPORATED; MICHIGAN SUGAR COMPANY; UNITED SUGAR PRODUCERS & REFINERS f/k/a UNITED SUGARS CORPORATION; COMMODITY INFORMATION, INC.; and RICHARD WISTISEN,**<br><br>        Defendants. | **CIVIL ACTION NO.: 24-cv-1903**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

        Plaintiff, Hu-Yu, Inc. d/b/a City Wok ("Plaintiff"), individually and on behalf of

the indirect purchaser classes defined below, brings this class action to recover treble

damages, injunctive relief, and any other appropriate relief, based on violations of the

Sherman Act and various state antitrust and consumer protection laws by Defendants

ASR Group International, Inc. ("ASR Group"), American Sugar Refining, Inc. ("ASR"),

Domino Foods, Inc. ("Domino," together with ASR Group and ASR, "ASR/Domino"),

Cargill, Incorporated ("Cargill"), Michigan Sugar Company ("Michigan Sugar"), United

Sugar Producers & Refiners f/k/a United Sugars Corporation ("United," together with

ASR/Domino, Cargill, and Michigan Sugar, the "Producing Defendants"), Commodity

Information, Inc. ("Commodity") , and Richard Wistisen ("Wistisen," together with

Commodity and the Producing Defendants, the "Defendants") and allege as follows:

**NATURE OF THE ACTION**

1.      Granulated Sugar—also called "refined," "white," or "table" sugar—is

sugar ground into uniform crystals and is produced by extracting the sucrose from sugar

beets or sugarcane, which is milled into raw sugar, refined into Granulated Sugar, and

sold to consumers.

2.      This class action arises from Defendants' unlawful agreement to fix prices

for Granulated Sugar in the United States.  Plaintiff alleges that Producing Defendants,

among the largest producers and sellers of Granulated Sugar in the United States and

direct competitors, violated, *inter alia*, Section 1 of Sherman Act, 15 U.S.C. § 1, by

conspiring to artificially inflate the price of Granulated Sugar from at least January 1,

2019 to the present (the "Class Period").

3.      In furtherance of their conspiracy, Defendants, *inter alia*, exchanged

detailed, competitively sensitive, non-public information about Granulated Sugar prices,

capacity, sales volume, supply, and demand.  This exchange of information was intended

to facilitate Producing Defendants charging higher prices for Granulated Sugar in the

United States throughout the Class Period.

4.      As a result of Defendants' price-fixing conspiracy, Granulated Sugar prices

were inflated throughout the Class Period in the United States, forcing Plaintiff and the

other class members to pay supra-competitive prices for Granulated Sugar.

5.      Plaintiff, an indirect commercial purchaser of Granulated Sugar, and the other class members (collectively, the "Commercial Indirect Purchasers") suffered antitrust injury as a direct result of Defendants' unlawful conduct.  Plaintiff seeks treble damages and injunctive relief.  Plaintiff also demands a jury trial.

## JURISDICTION AND VENUE

6.      Plaintiff brings this action on behalf of itself and all similarly situated Commercial Indirect Purchasers of Granulated Sugar in the United States and entities under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26, to secure damages and injunctive relief for Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

7.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

8.      Venue is proper in this District under Sections 4, 12, and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22, and 26 and 28 U.S.C. § 1391(b), (c), and (d), because one or more Defendants reside in, are found in, transacted business in, or have an agent who transacted business in this District and because a substantial portion of the affected interstate commerce was carried out here.  Specifically, Defendants United and Cargill have their principal places of business in this District.

9.      Furthermore, a substantial portion of the growing and refining of sugar beets takes place in Minnesota.  *See* Figure 1.[1]

---

[1] *Where Does Sugar Come From*?  The Sugar Association (last visited May 20, 2024), available at: https://www.sugar.org/sugar/farm-to-table/.

**Figure 1**



WHERE IN THE U.S.
does sugar come from?

sugar beet factory     sugar cane refinery
sugar beet growth      sugar cane growth

10.     This Court has personal jurisdiction over the Defendants because, among

other reasons, they (a) transacted business throughout the United States, including in this

District; (b) manufactured, sold, shipped, and delivered or directed the manufacture, sale,

shipment, and delivery of substantial quantities of sugar throughout the United States,

including in this District; (c) had substantial contacts with the United States, including in

this District; and (d) engaged in an antitrust conspiracy that was directed at and had a

direct, foreseeable, and intended effect of causing injury to the business or property of

persons residing in, located in, or doing business throughout the United States, including

in this District.

11.     During the Class Period, the Producing Defendants sold and shipped sugar

in a continuous and uninterrupted flow of interstate commerce, which included sales and

shipments to or from this District.  Defendants' conduct had a direct, substantial, and

reasonably foreseeable effect on interstate commerce in the United States, including this District.

## THE PARTIES

12.    Plaintiff Hu-Yu, Inc. d/b/a City Wok is a California corporation with its principal place of business in Los Angeles, California.  It has two restaurant locations in California.  During the Class Period, Plaintiff purchased Granulated Sugar indirectly from one or more Defendants in California and suffered antitrust injury as a result.

13.    Defendant ASR Group is a Florida corporation with its principal place of business West Palm Beach, Florida.  ASR Group is "the world's largest refiner and marketer of cane sugar, with an annual production capacity of 6 million metric tons of sugar" and produces "a full line of grocery and e-commerce, industrial, foodservice and specialty sweetener products, with a strong focus on innovation and product development."[2]  ASR Group is owned by Florida Crystals Corporation and Sugar Cane Growers Cooperative of Florida, two Florida-based sugarcane companies in the United States.

14.    Defendant ASR is a Florida corporation and global producer and seller of Granulated Sugar with its principal place of business in West Palm Beach, Florida.

15.    Defendant Domino is ASR Group's and ASR's marketing and sales subsidiary for Granulated Sugar, with its principal place of business in West Palm Beach, Florida.  ASR/Domino owns and operates sugar refineries in California, Louisiana,

---

[2] *Who We Are, ASR Group* (last visited May 20, 2024), available at:  https://www.asr-group.com/about-us/our-owners

Maryland, and New York.  ASR/Domino markets and sells its Granulated Sugar under the brand names Domino®, C&H®, Florida Crystals®, Redpath®, Tate & Lyle®, Lyle's® and Sidul®.[3]

16.     Defendant United is a Minnesota corporation based in Edina, Minnesota. United is a cooperative with four (4) member owners:  (1) United States Sugar Corporation, which owns and operates two sugar factories in Clewiston, Florida and Savannah, Georgia; (2) American Crystal Sugar Company, which is "is the largest beet sugar manufacturer in the United States";[4] (3) Minn-Dak Farmers Cooperative, which owns and operates a sugar beet processing factory in Wahpeton, North Dakota; and (4) Wyoming Sugar Company, LLC, which operates a sugar beet processing factory in Worland, Wyoming.[5]  United's retail brands include Crystal Sugar®.[6]

17.     Defendant Cargill is a Delaware corporation with its principal place of business in Wayzata, Minnesota.  Cargill claims to be "one of the leading sugar marketers in North America."[7]

18.     Defendant Michigan Sugar is a Michigan corporation with its principal place of business in Bay City, Michigan.  Michigan Sugar is a cooperative consisting of

---

[3] *Id.*

[4] *Who We Are, United Sugar Producers & Refiners* (last visited May 20, 2024), available at: https://unitedsugarpr.com/who-we-are/our-members/

[5] Complaint ¶ 9, *United States v. United States Sugar Corp., et al.*, No. 21-cv-01644 (D. Del. Nov. 23, 2021) (hereinafter, "*US Sugar Corp.*"), ECF No. 1.

[6] *Products*, United Sugar Producers & Refiners (last visited May 20, 2024), available at: https://unitedsugarpr.com/product-category/retail-products/

[7] *Sugar*, Products & Services, Cargill, Incorporated (last visited May 20, 2024), available at: https://www.cargill.com/food-beverage/na/sugar

900 sugar beet owners and has sugar beet processing facilities in Bay City, Caro, Croswell, and Sebewaing, Michigan.  It also has warehouse facilities in Michigan and Ohio.[8]

19.    Defendant Commodity is a Delaware corporation formed in 1981 with its principal place of business in Orem, Utah.  Throughout the Class Period, the Producing Defendants used Commodity as a conduit in their regular exchange of confidential, proprietary, and competitively sensitive non-public information.

20.    Defendant Wistisen is the principal of Commodity who, as part of the price-fixing conspiracy, collected and shared confidential, proprietary, and competitively sensitive non-public information among the Producing Defendants.

21.    Unknown persons, firms, and corporations not named as Defendants participated as co-conspirators with Defendants and performed acts and made statements in furtherance of Defendants' conspiracy.  Defendants are jointly and severally liable for the acts of their co-conspirators, whether Plaintiff has named these co-conspirators as Defendants.

22.    Whenever reference is made to any act of a corporation, the allegation means that the corporation engaged in the act by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

---

[8] *Our Story*, Michigan Sugar (last visited May 20, 2024), available at: https://www.michigansugar.com/

23.     Defendants are also liable for acts done in furtherance of the alleged conspiracy by companies they acquired through mergers and acquisitions.

## FACTUAL ALLEGATIONS

### I.     Relevant Factual Background

#### A.     Granulated Sugar

24.     "Granulated Sugar," also known as "refined," "white," or "table" sugar, is sugar ground into uniform crystals.  It is produced by extracting the sucrose from sugar beets or sugarcane, which is milled into raw sugar, refined into Granulated Sugar, and sold to direct purchasers who resell, consume, or further refine it into other products. Eighty percent of all sugar sold in the United States is Granulated Sugar.[9]

25.     Sugarcane, a tall perennial grass, is grown in tropical and semitropical climates. In the United States, sugarcane is mainly produced in Florida, Louisiana, and Texas.

26.     Sugar beets, the other leading raw material for manufactured sugar in the United States, are produced in Michigan, Minnesota, North Dakota, Colorado, Montana, Nebraska, Wyoming, California, Idaho, Oregon, and Washington.[10]  The Granulated Sugar produced from sugarcane and sugar beets are chemically indistinguishable.[11]

---

[9] Proposed Findings of Fact of the United States [Redacted] ¶ 25, *US Sugar Corp.*, (May 16, 2022), ECF No. 219.

[10] *Background, Sugars and Sweeteners*, U.S. Dep't of Agric. Econ. Research Serv. (Oct. 19, 2021), available at: https://www.ers.usda.gov/topics/crops/sugar-and-sweeteners/background/

[11] *See* Sugar 101, Cane Sugar vs. Beet Sugar, Imperial Sugar (last visited May 20, 2024), available at: https://www.imperialsugar.com/sugar-101/cane-sugar-vs-beet-sugar; *see generally*

27.    The Granulated Sugar produced from sugarcane and sugar beets is used both by Commercial Indirect Purchasers (such as restaurants and other food service businesses) as well as ordinary consumers as a household sweetener. Additionally, twenty-five percent (25%) of the Granulated Sugar produced globally is consumed in the production of biofuels and other industrial applications.[12]

28.    Producing Defendants sell Granulated Sugar directly to some large purchasers ("Direct Purchasers"). In addition, commercial, industrial, and institutional entities (*i.e.*, the proposed class of Commercial Indirect Purchasers) buy their Granulated Sugar from wholesalers, distributors, or retailers.

### B.    The United States Market for Granulated Sugar

29.    The market for Granulated Sugar in the United States is highly concentrated. For example, in the Southeastern United States, where most of the sugarcane crop is grown, the United States Department of Justice ("DOJ") found that United and ASR/Domino have a nearly 75% market share for sugar sales, which leaves customers vulnerable to price-fixing.[13]

30.    Producing Defendants account for a majority of the sales of Granulated Sugar in the United States. In 2021, Domino, United, Imperial, Michigan, and Cargill's

---

Exhibit 7, *US Sugar Corp.* (Apr. 18, 2022), ECF No. 207-7 (containing presentation titled "Sugar 101").

[12] Vivek Voora, Steffany Bermúdez, & Cristina Larrea, *Global Market Report: Sugar,* INT'L INST. FOR SUSTAINABLE DEV. (2019).

[13] Complaint at 1, *US Sugar Corp.*, ECF No. 1.

combined market share for sales of Granulated Sugar in the United States was roughly 68%.[14]

31.    Domino and United alone accounted for 50% of total Granulated Sugar sales in the United States in 2021.[15]

32.    In 2023, despite the DOJ's attempt to block further consolidation of an "already cozy sugar industry," United acquired Imperial Sugar.[16]  The DOJ predicted that United "would likely raise prices and face reduced pressure to provide reliable service and a high-quality product," and the merger would ultimately "raise costs for food and beverage manufacturers, retailers, distributors, and ultimately American households."[17]

### C.    Sugar is a Commodity Product.

33.    A commodity is a basic item or good used in commerce that is interchangeable with other goods of the same type.  Commodities are most often used as inputs in the production of other goods or services.

34.    Granulated Sugar and other forms of sugar are commodities.

35.    A commodity futures contract is a standardized bilateral executory agreement for the purchase and sale of a particular commodity at a specified price at a

---

[14] Defendants' Proposed Findings of Fact [Redacted] ¶ 177, *US Sugar Corp.* (May 26, 2022), ECF No. 231.

[15] *Id.*

[16] Press Release, *Justice Department Sues to Block U.S. Sugar's Proposed Acquisition of Imperial Sugar*, DOJ (Nov. 23, 2021), https://www.justice.gov/opa/pr/justice-department-sues-block-us-sugar-s-proposed-acquisition-imperial-sugar

[17] Complaint ¶ 36, *US Sugar Corp.*, ECF No. 1.

specified time in the future.  In the context of futures trading, a commodity is the underlying instrument upon which a futures contract is based.

36.    Options and futures for sugar products are traded as commodity futures contracts on the Chicago Mercantile Exchange ("CME") and the Intercontinental Exchange, Inc. ("ICE").

37.    The White Sugar futures contract is traded on ICE under the symbol "W." It is used "as the global benchmark for the pricing of physical white sugar.  It is actively traded by the international sugar trade, sugar millers, refiners, and end-users (manufacturers) as well as by managed funds and both institutional and short-term investors."[18]

38.    The world refined sugar price is measured by the nearby ICE White Sugar futures contract settlement prices—often referred to as the No. 5 contract.  Refined prices are higher than raw sugar prices, reflecting the cost of refining and storing sugar to a higher polarity for human consumption.[19]

39.    Other important sugar futures contracts in the United States are the Sugar No. 11 Futures on ICE, the "the world benchmark contract for raw sugar trading" and the Sugar No. 16 Futures on ICE, which is US-grown or foreign origin duty paid, raw cane sugar.[20]

---

[18] Product Spec, *White Sugar Futures*, ICE (last visited May 20, 2024), available at: https://www.ice.com/products/37089080/White-Sugar-Futures

[19] *Background, Sugars and Sweeteners*, U.S. Dep't of Agric. Econ. Research Serv. (Oct. 19, 2021), available at: https://www.ers.usda.gov/topics/crops/sugar-and-sweeteners/background/

[20] *Product Spec, Sugar No. 11 Futures*, ICE (last visited May 20, 2024), available at: https://www.ice.com/products/23/Sugar-No-11-Futures; *Product Spec, Sugar No. 16 Futures*,

40.     Each White Sugar futures contract represents fifty tonnes of sugar, specifically, sugar that is "[w]hite beet, cane crystal sugar or refined sugar of the crop or production current on the first day of the delivery period, free running of regular grain size and fair average of the quality of deliveries made from the declared origin from such crop or production, with minimum polarisation 99.8 degrees, moisture maximum 0.06%, and colour of a maximum of 45 units ICUMSA attenuation index at time of delivery to vessel at the port."[21]

41.     White Sugar futures contracts are physically settled, meaning a buyer of a White Sugar futures contract who does not offset their position before expiration is obligated to take delivery of an equivalent amount of physical White Sugar.

42.     As of December 29, 2023 (the last trading day of the last full calendar year), ICE sugar futures contracts had a year-to-date volume of 49,531,279 contracts traded.[22]

## II.    Defendants Conspired to Fix Prices for Granulated Sugar.

43.     The Producing Defendants agreed to artificially raise, fix, maintain, or stabilize prices of Granulated Sugar throughout the Class Period.  As part of this conspiracy, Defendants sent price signals to the market and knowingly shared accurate,

---

ICE (last visited May 20, 2024), available at:  https://www.ice.com/products/914/Sugar-No-16-Futures; Jay Kindred, *The Sugar Futures Contracts*, Czapp (Apr. 11, 2023), available at: https://www.czapp.com/explainers/czapp-explains-the-sugar-futures-contracts/

[21] *Product Spec, White Sugar Futures*, ICE (last visited May 20, 2024), available at: https://www.ice.com/products/37089080/White-Sugar-Futures

[22] ICE Daily & MTD/QTD/YTD Volume and Open Interest (OI) (Dec. 29, 2023), available at: https://www.ice.com/report/176.

competitively sensitive, non-public information with each other, including through Defendant Commodity and its principal, Richard Wistisen.

44.    Documents submitted as evidence of industry consolidation by the DOJ show conversations throughout the Class Period between Producing Defendants and Commodity in which Producing Defendants send or receive competitively sensitive information. *See infra*, Section III.[23]

45.    There is no economically rational reason for the Producing Defendants to share such information other than to implement their unlawful agreement.

46.    The Producing Defendants used Defendant Commodity as a conduit in the price-fixing conspiracy.  Defendant Commodity purports to analyze the sugar industry. However, Defendant Commodity has no public presence.  It does not maintain a website on the internet, does not advertise its services to the public, and does not publish publicly available reports on the sugar industry or offer to sell or provide any reports on, or analysis of, the sugar industry other than to a select few producers, as alleged herein.

47.    Defendant Commodity does not gather industry data through anonymous surveying or polling.  Rather, the Producing Defendants regularly share competitively sensitive information about their pricing and sold positions with Defendant Commodity, which contemporaneously shares that information among the other Producing Defendants.

---

[23] *See generally* Trial Exhibit [Testimony of Dr. Dov Rothman], Analysis Group (Apr. 20, 2022), available at: https://www.justice.gov/atr/file/1552186/dl?inline

48.    Producing Defendants exchanged information through Defendant
Commodity including, but not limited to, companies' current pricing, future or forward
pricing, pricing strategies, sold positions, spot prices, contract prices, crop yields, and
crop size.

49.    The information that Defendant Commodity gathers includes the Producing
Defendants' current pricing, future or forward pricing, pricing strategies, copy
size/yields, sold positions, spot prices, and contract prices.  These exchanges happened
regularly and rapidly, with Defendant Commodity sharing information obtained from one
Producing Defendant to another often within hours of receiving it.

50.    The purpose of their sharing of competitively sensitive information was to
enable Producing Defendants to raise, fix, maintain, stabilize, and/or coordinate prices of
Granulated Sugar in the United States.

51.    The Producing Defendants then used the competitively sensitive
information they received from Defendant Commodity when deciding how much to
charge for Granulated Sugar.

52.    Defendant Commodity does not make its reports available to purchasers or
consumers of Granulated Sugar, thereby strengthening the Producing Defendants'
advantage over other market participants.

53.    Producing Defendants did not do the things true competitors would do in a
competitive market.  They did not attempt to capture each other's market share or lower
prices as their costs declined.  Rather, Producing Defendants shared competitively

sensitive confidential information and used it to ensure that they would not undercut each other's prices.

54.    The sharing of information between the Producing Defendants thus enabled them to artificially raise, fix, maintain, and/or stabilize the prices at which Granulated Sugar was sold to their customers pursuant to their anticompetitive agreement.

55.    Due to the United States Department of Agriculture ("USDA") production allotments linked to USDA loan programs and limitations on imports and tariffs, the Producing Defendants know that as they sell out of Granulated Sugar, they can charge higher prices because there will be little to no additional competitive product available in the market that could force them to reduce price.  Thus, knowing one another's sold position allows them to calculate when and how much they can raise, fix, maintain, and/or stabilize prices due to the amount of supply.

56.    As discussed below, Producing Defendants account for the majority of Granulated Sugar production and sales.  As a result, smaller market participants are not an effective competitive constraint on Producing Defendants' dominance.

57.    As detailed below, similar conduct by earlier producers of Granulated Sugar led to a consent decree in 1978 that forbade such information exchanges by competitors.

III.    **The Anticompetitive Agreement**

58.    The Producing Defendants knowingly and intentionally sought, shared, received, and/or used non-public, competitively sensitive information from Defendant

Commodity pursuant to their anticompetitive agreement as alleged below, in order to raise, fix, maintain, and/or stabilize Granulated Sugar prices.

59.    Producing Defendants' sold positions were supposed to be confidential. Nonetheless, Producing Defendants repeatedly shared such information with their competitors through Defendant Commodity.

60.    High-level executives at the Producing Defendants, who had direct involvement in pricing, shared the sensitive information with Mr. Wistisen.  The sharing of information between the Producing Defendants thus allowed them to raise, fix, maintain, and/or stabilize Granulated Sugar prices pursuant to the unlawful agreement.

61.    The unlawful agreement to fix prices was implemented via information exchanged through Defendant Commodity, which included current pricing, future or forward pricing, pricing strategies, and sold positions.  The pricing shared among Defendants included spot prices, contract prices, and sold positions.  Current spot prices can also be turned into contract prices.

62.    Figures 2 and 3 below show two such exchanges involving United, ASR, and Mr. Wistisen, which the DOJ offered as "Evidence of Coordinated Interaction" in its suit to enjoin the United/Imperial merger.[24]

_____

[24] *Id.* at pp. 23 and 24.

**Figure 2**



**Figure 3**



63.     Conversations throughout the Class Period show similar instances of

Producing Defendants receiving each other's competitively sensitive information:

(a)     On February 12, 2019, Rob Sproull (ASR) and Alan Henderson

(ASR) discussed Imperial's pricing.  Mr. Henderson reported that

Imperial was "lowering their 50lb.  EFG price to $19.75 FOB/22.00

del. NY/NJ/Pa.  our number will be tested with the trade."  Mr.

Sproull wrote: "let's book March and see how we fair against the

Imperial price.  Any idea what has them in the market with the low

prices?  That can't be their read of the competition given what we've

observed over the past 5-6 months."[25]

(b)     On November 13, 2019, Rob Sproull (ASR) e-mailed his colleague,

Luis Fernandez (ASR), that he "[l]earned from [redacted] that

United has committed to honor forecasted volume all the way

through FY."[26]

(c)     On March 3, 2020, Alan Henderson (ASR) emailed his colleague

Rob Sproull (ASR) re: "Colloquium Recap" with "a summary of

points from the International Sweetener Colloquium," including (i)

"Belief is that LSR/Cargill will be short on raws in Aug/Sep."; (ii)

---

[25] Exhibit 7, Non-Party American Sugar Refining Inc.'s Motion for a Protective Order, *US Sugar Corp.* (Apr. 18, 2022), ECF No. 207-7.

[26] Exhibit 3, Non-Party American Sugar Refining Inc.'s Motion for a Protective Order, *US Sugar Corp.* (Apr. 18, 2022), ECF No. 207-3.

"Competitive Numbers" for fiscal year 2021 for certain competitors, including Cargill's future pricing of "$37.50 gross FOB"; and (iii) "Reports have United Sugars telling customers that their 2020 slicing campaign will begin on August 10."[27]

(d)     On August 12, 2020, Mr. Henderson and Adam Whittaker of ASR exchanged "Good competitive intelligence," including "Cargill moving up to $37.75 is suspicious as [redacted] have noted them being lower" and "I also heard from someone else today that Cargill was at $36 net for select accounts."[28]

(e)     On August 18, 2020, Alan Henderson (ASR) e-mailed his colleague at ASR, Rob Sproull, that he was "hearing reports that Cargill is moving close to 80% sold for FY21.  We are trying to find out if this correlates to an increase in their pricing."[29]

(f)     On August 18, 2020, Mr. Wistisen (Commodity) e-mailed Mr. Henderson (ASR), "My goodness, what a difference a month makes.

[27] Exhibit 12, Non-Party American Sugar Refining Inc.'s Motion for a Protective Order, *US Sugar Corp.* (Apr. 18, 2022), ECF No. 207-12.

[28] Exhibit 29, Non-Party American Sugar Refining Inc.'s Motion for a Protective Order, *US Sugar Corp.* (Apr. 18, 2022), ECF No. 207-29.

[29] Exhibit 11, Non-Party American Sugar Refining Inc.'s Motion for a Protective Order, *US Sugar Corp.* (Apr. 18, 2022), ECF No. 207-11.

Michigan 85+% booked, Western 75-%."[30]  In the same chain, Mr.

Wistisen shared Michigan's crop yield information.

(g)    On September 16, 2020, Mr. Wistisen (Commodity) asked Alan

Henderson (ASR), "[w]ondering where you would put refined prices

and coverage?"  Mr. Henderson replied with "Pricing for FY20."

Mr. Wistisen thanked Mr. Henderson and wrote: "Very few crop

updates or pricing updates today…I'll send them over as they come

in over the next day or two."[31]

(h)    On September 22, 2020, Mr. Henderson (ASR) told Mr. Wistisen

(Commodity), "70% covered in the fiscal year (Oct.20- Sept.21).  I

believe Cargill is well sold for FY21 but not calendar year 21.  Same

with Imperial and Clewiston."  In the same chain, Mr. Wistisen

(Commodity) shared his own information about Cargill and

Imperial, "well sold, but unclear if whether FY21 or 2021, probably

2021. And imperial reported about two weeks ago that they were

only 65% for 2021."[32]

---

[30] Exhibit 37, Non-Party American Sugar Refining Inc.'s Motion for a Protective Order, *US Sugar Corp.* (Apr. 18, 2022), ECF No. 207-37.

[31] Exhibit 22, Non-Party American Sugar Refining Inc.'s Motion for a Protective Order, *US Sugar Corp.* (Apr. 18, 2022), ECF No. 207-22.

[32] Exhibit 28, Non-Party American Sugar Refining Inc.'s Motion for a Protective Order, *US Sugar Corp.* (Apr. 18, 2022), ECF No. 207-28.

(i)     On November 16, 2020, Mr. Wistisen (Commodity) e-mailed Eric

Speece (United) with industry information and asked whether

"United has pullback from spot market, is that right?"  Mr. Speece

forwarded the e-mail to his colleague, Dick Swart, and wrote:

"should I let him know we are out of the market for the time being or

selectively selling?  I have not heard we have had any issues at the

plants due to covid."  Mr. Swart (United) replied, "I'd like him to

hear $36.50/$38.00 and probably moving higher based on the

strength of the booked position.  Stop short of saying anything about

being oversold."[33]

(j)     On November 16, 2020, Mr. Wistisen (Commodity) emailed Mr.

Henderson (ASR), asking "Curious what you're hearing on domestic

raw and refined pricing? I haven't heard back from United yet.  Did

they pullback from spot market?  Where would you put prices and

cane coverage?" Mr. Henderson responded with ASR pricing

information.[34]

(k)     On February 15, 2021, Eric Speece (United) shared with Mr.

Wistisen (Commodity) that United was "still at the $36.50 and

---

[33] Joint Appendix, Volume IV at 1448, *United States v. United Sugar Corp., et al.,* No. 22-2806 (3d Cir. 2022).

[34] Exhibit 27, Non-Party American Sugar Refining Inc.'s Motion for a Protective Order, *US Sugar Corp.* (Apr. 18, 2022), ECF No. 207-27.

$38.50 with zero problems selling at those values." Mr. Wistisen

asked, "Sounds good, glad you're moving fill-in volumes at superb

prices! Just to clarify: United has not issued FY22 list prices, and at

this point doesn't expect FY22 prices to change much from

remainder FY21?"[35]

(l)     On February 17, 2021, Mr. Wistisen (Commodity) shared

information with Alan Henderson (ASR) obtained from a "[l]ong

conversation with United." Mr. Henderson (ASR) then forwarded

this information to Adam Whittaker (ASR) and wrote, "FYI below

from Rich Wistisen…United is usually pretty upfront with Rich."

Mr. Whittaker wrote back, "Good timing. Just off the phone with

Ron," and shared that "United telling him they're at $36.50 for 2022

but very little activity for now" and "[redacted] also told me he's

hearing $36.50 fob rrv from United but he can likely get $36 if he

asks Western and NSM."[36]

(m)    On May 18, 2021, Mr. Wistisen (Commodity) e-mailed Mr.

Henderson (ASR) re: "crop updates, pricing." Mr. Wistisen shared,

inter alia, "Just talked with United: prices unchanged, spot and

---

[35] Joint Appendix Volume IV at 1443, *United States v. United Sugar Corp., et al.*, No. 22- 2806 (3d Cir. 2022).

[36] Exhibit 26, Non-Party American Sugar Refining Inc.'s Motion for a Protective Order, *US Sugar Corp.* (Apr. 18, 2022), ECF No. 207-26.

forward, Hello!?  But their head honcho is on vacation, bad timing.
Only about 40% covered.  But expect big action over the next
month, 20+% add to bookings, and at that time expect to raise
prices, and not by just a dollar.  Saying they're not feeling the heat
from Renville that they did last year, or from Cargill."[37]

(n)    On June 17, 2021, Mr. Wistisen (Commodity) shared Michigan's
crop yield information with Mr. Henderson (ASR): "Michigan:
above average crop, 50% excellent development, other 50% holding
good potential but very dry.  I have their crop up 1.50 tpa above
average."[38]

(o)    On July 12, 2021, Mr. Wistisen (Commodity) shared with Mr.
Henderson (ASR) that "rumors suggest United is also now around
80% booked and recently increased prices (I hope to have
confirmation soon)."  Mr. Henderson forwarded the e-mail to Mr.
Whittaker and several others at ASR, writing, "FYI below . . .
United price increase.  Rich is thinking $2.00 increase but no official
word yet.  Let's see if we can hunt something down."[39]

---

[37] Exhibit 32, Non-Party American Sugar Refining Inc.'s Motion for a Protective Order, *US Sugar Corp.* (Apr. 18, 2022), ECF No. 207-32.

[38] Exhibit 36, Non-Party American Sugar Refining Inc.'s Motion for a Protective Order, *US Sugar Corp.* (Apr. 18, 2022), ECF No. 207-36.

[39] Exhibit 35, Non-Party American Sugar Refining Inc.'s Motion for a Protective Order, *US Sugar Corp.* (Apr. 18, 2022), ECF No. 207-35.

64.     Each of the above representative examples demonstrates an understanding among Defendants that their Granulated Sugar information shared with Defendant Commodity would be exchanged among the Producing Defendants.  Current and future pricing information, crop yield information, and sold positions are competitively sensitive information, and Defendants intended to and did use that information to inflate Granulated Sugar prices throughout the Class Period, to the detriment of Plaintiff and the proposed class of Commercial Indirect Purchasers.

65.     Other conversations show that Defendants knew that the market would react to price signaling from Producing Defendants:

(a)     On January 8, 2020, Mr. Sproull (ASR) instructed Mr. Henderson (ASR) to "signal to the market" that there would be tightness and Domino would "maintain price."[40]

(b)     Similarly, on January 20, 2020, Eric Speece (United) e-mailed his colleagues at United, Dirk Swart and Steven Hanson, "May want to communicate pricing earlier than the colloquium to send a msg," and to "[l]et me know if there are any key messages you would like me to relay on."[41]

---

[40] Proposed Findings of Fact of the United States [Redacted] at 138, *US Sugar Corp.* (May 16, 2022), ECF No. 219.

[41] Joint Appendix Volume IV at 1445, *United States v. United Sugar Corp., et al.*, No. 22- 2806 (3d Cir. Nov. 1, 2022).

66.     These conversations evidence the coordinated interaction the DOJ observed in the sugar industry and show an agreement among Defendants to share competitively sensitive information with each other with the intention to raise, fix, maintain, or stabilize Granulated Sugar prices during the Class Period.

## IV.    Defendants' Conspiracy Caused Inflated Prices for Granulated Sugar

67.     Prices for Granulated Sugar in the United States were artificially inflated due to Defendants' conspiracy.

68.     For example, in the United States, average Granulated Sugar prices rose 8% during 2021, the largest increase since 2011, despite a 10% increase in Granulated Sugar production in the United States.[42]

69.     In April 2019, prices for the ICE No. 11 Sugar futures contract reached its highest point in 11 years.[43]  By October 2019, the contract was trading 37% higher year to date.[44]

70.     In the past 20 years, the price of Granulated Sugar has doubled on an indexed basis.  There is no economic rationale for the rate of price increases.

---

[42] *Sugar Market 2022: U.S. Prices to Drop 4% Due to Rising Supply – IndexBox*, Yahoo! Finance, via IndexBox, Inc. (Feb. 7, 2022), https://finance.yahoo.com/news/sugar-market-2022-u-prices-160000954.html

[43] Lee Ying Shan, Sugar prices spike to 11-year high and could rise further due to extreme weather, CNBC (Apr. 19, 2023), https://www.cnbc.com/2023/04/20/sugar-prices-spike-to-11-year-high-and-could-rise-further-due-to-extreme-weather.html

[44] Myra P. Saefrong, *Why sugar prices have risen nearly 40% so far this year*, MarketWatch (Oct. 24, 2023), available at https://www.marketwatch.com/story/why-sugar-prices-have-risen-nearly-40-so-far-this-year-ef51afb9

71.     Commencing in January 2019, prices began a steep climb that continues today. Between January 1, 2019 through the present, the Producer Price Index ("PPI") for Sugar Manufacturing calculated by the Federal Reserve Bank of St. Louis went from 141.900 to 216.050.  After United's acquisition of Imperial in November 2022,[45] prices further increased, going from a PPI for Sugar Manufacturing of 180.221 to 216.050 by February 2024.

72.     Figure 4 illustrates the dramatic sugar PPI increase before and after the start of the Class Period.[46]  Figure 5 shows the rolling front month ICE futures price for January 2019 to March 2024.[47]

---

[45] Ron Sterk, US Sugar Corp. completes purchase of Imperial, Baking Business (Nov. 30, 2022), https://www.bakingbusiness.com/articles/57905-us-sugar-corp-completespurchase-of-imperial

[46] Producer Price Index by Industry: Sugar Manufacturing, St. Louis Fed Economic Research (last visited May 20, 2024), https://fred.stlouisfed.org/series/PCU3113131131

[47] Report Center, ICE (last visited May 20, 2024), https://www.ice.com/marketdata/reports

**Figure 4**



**FRED Producer Price Index for Sugar Manufacturing**
**Between January 2014 and February 2024**

**Figure 5**



**ICE Sugar Futures Front Month End-of-Day Price**
**Between January 1, 2019, and March 19, 2024**

**V.    The Granulated Sugar Market is Conducive to Collusion**

73.    In addition to the extensive information sharing by the Producing Defendants and the structural characteristics of the industry, other "plus factors" plausibly suggest the likelihood of collusion, including, but not limited to:  (1) high vertical integration; (2) high barriers to entry; (3) sugar industry consolidation and concentration; (4) inelastic supply and demand; (5) a lack of significant substitutes for Granulated Sugar; and (6) a history of antitrust violations by sugar manufacturers.

74.    First, the Granulated Sugar industry is almost entirely vertically integrated. Granulated Sugar producers own or control each aspect of growing sugar cane or sugar beets, processing them into raw sugar using their own processing facilities, refining the raw sugar into Granulated Sugar in their own refining facilities, and selling their Granulated Sugar to direct purchasers.

75.    Second, there are high barriers to entering the market as a manufacturer of Granulated Sugar.  New entry or expansion by existing producers of Granulated Sugar is unlikely to prevent or remedy the anticompetitive landscape of the market for Granulated Sugar in the United States.  The capital and time necessary to compete with the Producing Defendants would be substantial, and Producing Defendants already have large economies of scale, utilizing large and expensive production facilities.  Moreover, Granulated Sugar manufacturers must be vertically integrated with growers of sugar beets or sugarcane to qualify for United States Department of Agriculture loans and production

allotments that enable growers to process raw sugar into Granulated Sugar without competition from imports.

76.    Third, in part due to these high barriers to entry, the Granulated Sugar industry is highly concentrated, with Producing Defendants accounting for 50% or more of the United States market for Granulated Sugar.[48]  The industry has only become more concentrated since 2023, when United acquired Imperial, resulting in a substantial increase in dominance by ASR/Domino and United.  The DOJ noted in 2021 that after the United/Imperial merger, United and Domino would control about seventy-five percent (75%) of all refined sugar sales in each of the geographic regions it examined.[49]  Whittaker of ASR noted in March 2021 about the Imperial acquisition: "1 less competitor and now 3 companies account for 75% of the market."[50]

77.    Fourth, demand for Granulated Sugar is inelastic, so a decrease in supply in the face of stable or rising demand will increase prices. There is no meaningful substitute for Granulated Sugar, so the Producing Defendants know that they can raise prices when less Granulated Sugar is available to sell.

78.    Fifth, Defendants know that the price support programs implemented by the USDA limit the number of sources of raw sugar for refinement into Granulated Sugar and

---

[48] *See* n.14, *supra.*

[49] *See* n.13, *supra.*

[50] Exhibit 24, Non-Party American Sugar Refining Inc.'s Motion for a Protective Order, *US Sugar Corp.* (Apr. 18, 2022), ECF No. 207-24.

protecting them by limiting imports of sugar.  Defendants know they can charge higher prices as a result.

79.    In sum, the Granulated Sugar industry has characteristics that make the exchanges by Defendants of competitively sensitive, non-public material internal information highly anticompetitive and allowed the Producing Defendants to raise, fix, maintain, and/or stabilize Granulated Sugar prices during the class period.  As a result, Defendants' unlawful conduct caused Plaintiff and the Class members to pay artificially inflated prices for Granulated Sugar during the Class Period.  These prices exceeded the amounts they would have paid if the prices for Granulated Sugar had been determined in a competitive market.  Plaintiff and Class members have suffered antitrust injury because of Defendants' conduct.

## VI.    History of Anticompetitive Conduct in the Sugar Industry

80.    The sugar industry has been marked by repeated violations of the antitrust laws going back to the 1930's, when the Supreme Court upheld a lower court decision finding that a sugar trade association violated the antitrust laws by, inter alia, requiring advance pricing announcements by manufacturers.[51]

81.    In 1952, the Ninth Circuit upheld a district court award of treble damages to plaintiff sugar beet growers harmed by an "unlawful price fixing combination" involving American Crystal Sugar Co.[52]

---

[51] *See Sugar Institute v. United States*, 297 U.S. 553, 582 (1936).

[52] *American Crystal Sugar Co. v. Mandeville Island Farms*, 195 F.2d 622, 626 (9th Cir. 1952).

82.     In the 1970's, the DOJ accused sugar refiners of price-fixing, and specifically of using "brokers to act as go-betweens in carrying price information and exchanging assurances on price actions between and among refiners."[53]  In 1978, the sugar refiners and the DOJ entered into a consent decree under which the defendants were enjoined from, inter alia, "agreeing to fix prices or announce price changes in advance for the sale of . . . sugar . . . [and] from exchanging information, directly or indirectly, as to the sale of . . . sugar."[54]

## CLASS ACTION ALLEGATIONS

83.     Plaintiff brings this lawsuit under Federal Rules of Civil Procedure 23(a), (b)(1) and (b)(2) on behalf of themselves and as representatives of a class of Commercial Indirect Purchasers seeking injunctive relief (the "Nationwide Injunctive Relief Commercial Indirect Class") defined as follows:

> All persons or entities who indirectly purchased Granulated Sugar from the Producing Defendants or their co-conspirators in the United States during the Class Period for use in their business or organization.

---

[53] Complaint at 16, *United States v. Great W. Sugar Co., et al.*, Case No. 74-2674-SW (N.D. Cal. Dec. 19, 1974) (complaint brought by the United States in 1974 against Great Western Sugar Company, American Crystal Sugar Company, Amalgamated Sugar Company, and other sugar refiners).

[54] Trade Regulation Reporter – Trade Cases, available at: https://www.justice.gov/atr/page/file/1138841/dl?inline (includes quoted language); *United States v. Great W. Sugar Co.*, No. 74-cv-2674, 1978 WL 1399, at *2 (N.D. Cal. Sept. 13, 1978). This consent decree expired after ten years.

84.     In addition, Plaintiff brings this lawsuit under Federal Rules of Civil

Procedure 23(a) and (b)(3) on behalf of itself and all others similarly situated seeking

damages as well as equitable relief, on behalf of the following class (the "Commercial

State Law Class"):

> All persons or entities who indirectly purchased
> Granulated Sugar from the Producing Defendants or co-
> conspirators in Alabama, Arizona, California,
> Colorado, Connecticut, the District of Columbia,
> Florida, Hawaii, Illinois, Iowa, Kansas, Maine,
> Maryland, Michigan, Minnesota, Mississippi,
> Nebraska, Nevada, New Hampshire, New Mexico, New
> York, North Carolina, North Dakota, Oregon, Rhode
> Island, South Dakota, Tennessee, Utah, and/or Vermont
> during the Class Period for use in their business or
> organization.

85.     Specifically excluded from the Class are (a) Defendants and their

coconspirators; (b) the officers, directors, or employees of any Defendant or co-

conspirator; (c) any entity in which any Defendant or co-conspirator has a controlling

interest; and (d) any affiliate, legal representative, heir, or assign of any Defendant or co-

conspirator and any person acting on their behalf.  Also excluded from the Class are (a)

the United States Government, (b) any judicial officer presiding over this action and the

members of their immediate family and judicial staff, and (c) any juror assigned to this

action.

86.     <u>Typicality.</u>  Plaintiff's claims are typical of the claims of other Class

Members.  Plaintiff and the Class Members sustained damages arising out of Defendants'

common course of conduct in the violations of law as complained of herein.  The injuries

and damages of the Class Members were directly caused by Defendants' wrongful

conduct in violation of the laws as alleged herein. No conflict between Plaintiff and the Class Members exists.

87.    _Adequacy._  Plaintiff will fairly and adequately protect the Class's interests. Plaintiff is represented by sophisticated, competent class action counsel, experienced in litigating complex class actions. Defendants have acted in an unlawful manner on grounds generally applicable to all Class Members.

88.    _Common Questions of Fact and Law Predominate._  The questions of law or of fact common to the claims of the Class predominate over any questions affecting only individual Class Members, including legal and factual issues relating to liability and damages, such that certifying this case as a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Questions of law and fact common to all Class Members include, but are not limited to:

      (a)    Whether Defendants and their co-conspirators engaged in an agreement, combination, or conspiracy to fix, raise, elevate, maintain, or stabilize prices of Granulated Sugar sold in interstate commerce in the United States;

      (b)    Whether Defendants agreed to unreasonably restrain trade in violation of federal antitrust laws;

      (c)    Whether Defendants' unlawful conduct caused Plaintiff and the Class to suffer antitrust injury;

      (d)    The effect of the conspiracy on the price of Granulated Sugar sold in the United States during the Class Period;

(e)    The type of injury suffered by Plaintiff and the Class Members; and

(f)    The appropriate class-wide measure of relief for Defendants' violations.

89.    <u>Superiority.</u>  Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

90.    The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

91.    Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

92.    Plaintiff reserves the right to modify these definitions and/or to propose subclasses, as appropriate, based on further investigation and discovery.

**EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT**

93.    Any and all applicable statutes of limitations are tolled.

94.     Plaintiff and the Class did not have actual or constructive notice of the conspiracy alleged herein until, at the earliest, the DOJ's Findings of Fact in support of its petition to stop the merger of United and Imperial was made public.  The full scope of the Defendants' unlawful conduct could not be discovered until the appellate exhibit volumes from the DOJ matter were made public.

95.     In addition, throughout the Class Period, the Defendants effectively, affirmatively, and fraudulently concealed their unlawful conspiracy from Plaintiff and the Class, and the conspiracy was inherently self-concealing.

96.     Plaintiff relied on Defendants' promises to obey the law and act with integrity.

97.     ASR Group's Code of Ethics and Business Conduct states in part, "ASR Group has always been dedicated to conducting business in a lawful and ethical manner in all of its operations."  It further states that it seeks success "only . . . while upholding the highest standards of ethical conduct and all of the laws, domestic and foreign, that apply to our work." Regarding antitrust and competition laws, the Code states that ASR Group is "prohibited" from engaging in "[a]greements with competitors to fix or control prices," and that it "may not engage in direct or indirect discussions or other contacts with competitors regarding . . . [p]rices to be charged by ASR Group or others or regarding other terms and conditions of sales[;] [t]erritories or markets in which products will be sold[;] . . . [and] [b]usiness, marketing or strategic plans."[55]

---

[55] Code of Ethics and Business Conduct, ASR Group (last visited May 20, 2024), https://www.asr-group.com/sites/asr_group_com/files/2023-01/ASR%20Group%20-

98.    United's Code of Business Conduct and Ethics states that "[o]beying the law, both in letter and in spirit, is the foundation on which our ethical standards are built. All our employees, officers, directors, agents and other representatives must respect and obey the laws of the cities, states and countries in which we operate."  It further states that "[w]e seek to outperform our competition fairly and honestly," and that there is an "obligation to protect [United's] assets [including United's] confidential information. . . . Unauthorized use or distribution of United Sugars' confidential information is prohibited."[56]

99.    Cargill's Code of Conduct states: "We obey the law.  Obeying the law is the foundation on which our reputation and Guiding Principles are built.  As a global organization privileged to do business all over the world, we have the responsibility to comply with all of the laws that apply to our businesses."[57]  Cargill's "Guiding Principles" state that "[a]ll employees are expected to follow competition laws, as well as Cargill's own competition policy.  Employees must also be careful when interacting with competitors—for instance, in connection with trade associations and benchmarking."  It continues, "[a]nother way of preserving fair and honest competition involves the proper collection and use of competitive intelligence.  Gathering competitive information and

---

%20Code%20of%20Ethics%20and%20Business%20Conduct%20%282020-01-20%29%20English%20-%20Final%20-%20Website%20%281%29.pdf

[56] Code of Business Conduct and Ethics, United Sugars Corporation (updated Mar. 16, 2020), https://unitedsugarpr.com/wp-content/uploads/2021/04/United-Sugars_-Code-of-Conduct-and-Ethics-Updated-March-2020.pdf

[57] Code of Conduct, Cargill, Incorporated (last visited May 20, 2024), https://www.cargill.com/about/code-of-conduct.

business data is an appropriate business practice, but it must be done legally and ethically.  It is never acceptable to engage in fraud, misrepresentation, trespassing or other illegal or unethical methods to obtain competitive intelligence."[58]

100.    Michigan Sugar's commitment to "Sustainability and Corporate Social Responsibility" states that the company "live[s] by our values – Excellence, Pride, Integrity, Compassion and Trust.  This is the foundation of a business environment that sets respect and dignity for co-workers, suppliers, customers, and partners as an absolute expectation."[59]

101.    These promises to obey the law and behave with integrity prevented Plaintiff from discovering Defendants' conduct earlier.

102.    As a result of the concealment of Defendants' unlawful conduct, and the self-concealing nature of Defendants' manipulative acts, Plaintiff asserts the tolling of the applicable statute of limitations affecting the rights of the causes of action asserted by Plaintiff and the Class.

103.    Defendants are equitably estopped from asserting that any otherwise applicable limitations period has run.

---

[58] Guiding Principles, Cargill (last visited May 20, 2024), https://www.cargill.com/doc/1432076403017/guiding-principles-en.pdf

[59] Sustainability, Michigan Sugar (last visited May 20, 2024), https://www.michigansugar.com/about-us/sustainability-corporate-social-responsibility/

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1**

104.    Plaintiff incorporates the Complaint's allegations by reference and re-alleges them as though fully set forth herein.

105.    The Defendants formed an unlawful contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act, (15 U.S.C. § 1) to raise, fix, maintain, and/or stabilize Granulated Sugar prices.

106.    Since at least 2019, Defendants exchanged competitively sensitive, nonpublic information related to prices, output, and costs as part of their unlawful agreement to raise, fix, maintain, and/or stabilize the prices of Granulated Sugar.

107.    Defendants' actions were not mere parallel conduct but rather an attempt to artificially raise, fix, maintain, and/or stabilize Granulated Sugar prices in the United States.

108.    The agreement was intended to and did unreasonably restrain trade, suppress competition, and/or had the likely and actual effect of raising, fixing, maintaining, and/or stabilizing prices in the Granulated Sugar market in the United States in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) for the four reasons listed below.

109.    First, the market for Granulated Sugar is highly concentrated with Defendants dominating production and having a combined market share of at least 68% in the United States.

110.    Second, Defendants have a strong motive to conspire to unreasonably restrain trade and raise, fix, maintain, and/or stabilize prices in the Granulated Sugar market in the United States.

111.    Third, Defendants formed and maintained their conspiracy using a high degree of inter-firm communication both directly and indirectly through conduit to facilitate the unlawful exchange of confidential, proprietary, and competitively sensitive non-public information.

112.    Fourth, certain of the Defendants are antitrust recidivists, which is probative of future collusion. *See, e.g., In re Nat. Gas Commodity Litig.*, 337 F. Supp. 2d 498, 500- 01 (S.D.N.Y. 2004).  Competition experts have noted that past experience participating in cartels enables companies to spot opportunities to profitably engage in anticompetitive conduct while evading detection.

113.    Pursuant to their unlawful agreement, Defendants agreed to and did share pricing and other information that distorted and suppressed competition in the relevant market. Defendants knew and intended that the information would be used to raise, fix, maintain, and/or stabilize prices of Granulated Sugar sold to Plaintiff and Class Members.

114.    The alleged contract, combination, understanding, agreement, or conspiracy is a *per se* violation of the federal antitrust laws.

115.    Alternatively, Defendants' conduct is also unlawful under a "quick look" or rule of reason analysis because the agreement is factually anticompetitive with no valid procompetitive justifications.  Any such procompetitive justifications proffered by Defendants would be pretextual, outweighed by the anticompetitive effects of

Defendants' conduct, and, in any event, could have been reasonably achieved through less restrictive means than the conspiracy and over acts alleged herein.

116.   Plaintiff and the Class Members have been injured and will continue to be financially injured by paying more for Granulated Sugar purchased from Producing Defendants and their co-conspirators than they would have paid and will pay absent the conspiracy.  This injury is of the type the federal antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful

117.   Plaintiff and the Class Members are entitled to an injunction against Defendants to prevent and restrain the violations alleged.

## SECOND CLAIM FOR RELIEF
### Violation of Ala. Code § 6-5-60, *et seq*.

118.   Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

119.   During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of Ala. Code § 6-5-60, *et seq*. with respect to purchases of Granulated Sugar in Alabama by the Class Members and/or purchased by Alabama residents.

120.   By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in Alabama.

121.   Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated

throughout Alabama; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout Alabama; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

122.    Defendants' unlawful conduct substantially affected Alabama's trade and commerce.

123.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

124.    By reason of the foregoing, Plaintiff and members of the Class are entitled to seek all forms of relief available under Ala. Code § 6-5-60, *et seq*.

**THIRD CLAIM FOR RELIEF**
**Violation of Arizona's Uniform State Antitrust Act**
**Ariz. Rev. Stat. § 44-1401, *et seq*.**

125.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

126.    During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of Ariz. Rev. Stat. Ann. § 44-1401, *et seq*. with respect to purchases of Granulated Sugar in Arizona by the Class Members and/or purchased by Arizona residents.

127.    By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in Arizona. Defendants'

combination or conspiracy had the following effects: (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Arizona; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout Arizona; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

128.    Defendants' unlawful conduct substantially affected Arizona's trade and commerce.

129.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

130.    By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under Arizona Revised Statute § 44-1401, *et seq*.

**FOURTH CLAIM FOR RELIEF**
**Violation of Cal. Bus. & Prof. Code, § 16720, *et seq*.**

131.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

132.    During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of Cal. Bus. & Prof. Code, § 16720, *et seq*. with respect to purchases of Granulated Sugar in California by the Class Members and/or purchased by California residents.

133.    By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in California.

134.    Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout California; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout California; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

135.    Defendants' unlawful conduct substantially affected California's trade and commerce.

136.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and members of the Class Members have been injured and are threatened with further injury.

137.    By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under Cal. Bus. & Prof. Code, § 16720, *et seq*., including tremble damages and their cost of suit, including reasonable attorney's fee.

## FIFTH CLAIM FOR RELIEF
### Violation of Colo. Rev. Stat. § 6-4-101, *et seq*.

138.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

139.    During the Class Period, Defendants entered into an unlawful

agreement in restraint of trade in violation of Colo. Rev. Stat. § 6-4-101, *et seq*. with respect to purchases of Granulated Sugar in Colorado by the Class Members and/or purchased by Colorado residents.

140.     By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in Colorado.

141.     Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Colorado; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Colorado; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

142.     Defendants' unlawful conduct substantially affected Colorado's trade and commerce.

143.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

144.     By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under Colo. Rev. Stat. § 6-4-101, *et seq*.

## SIXTH CLAIM FOR RELIEF
### Violation of Conn. Gen. Stat. § 35-26, *et seq.*

145.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

146.    During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of Conn. Gen. Stat. § 35-26, *et seq.* with respect to purchases of Granulated Sugar in Connecticut by the Class Members and/or purchased by Connecticut residents.

147.    By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in Connecticut.

148.    Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Connecticut; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout Connecticut; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

149.    Defendants' unlawful conduct substantially affected Connecticut's trade and commerce.

150.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

151.    By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under Conn. Gen. Stat. § 35-26, *et seq*.

**SEVENTH CLAIM FOR RELIEF**
**Violation of D.C. Code § 28-4501, *et seq*.**

152.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

153.    During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of D.C. Code § 28-4501, *et seq*. with respect to purchases of Granulated Sugar in District of Columbia by the Class Members /or purchased by District of Columbia residents.

154.    By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in District of Columbia.

155.    Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout District of Columbia; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high prices throughout District of Columbia; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members were paid supra-competitive, artificially inflated prices for Granulated Sugar.

156.    Defendants' unlawful conduct substantially affected District of Columbia's trade and commerce.

157.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members were have been injured and are threatened with further injury.

158.     By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under D.C. Code § 28-4501, *et seq*.

### EIGHTH CLAIM FOR RELIEF
**Violation of Fla. Stat. § 542.15, *et seq*.**

159.     Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

160.     During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of Fla. Stat. § 542.15, *et seq*. with respect to purchases of Granulated Sugar in Florida by the Class Members and/or purchased by Florida residents.

161.     By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in Florida.

162.     Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Florida; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout Florida; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

163.    Defendants' unlawful conduct substantially affected Florida's trade and commerce.

164.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

165.    By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under Fla. Stat. § 542.15, *et seq*.

## NINTH CLAIM FOR RELIEF
### Violation of Haw. Rev. Stat. Ann. § 480-1, *et seq*.

166.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

167.    During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of Haw. Rev. Stat. Ann. § 480-1, *et seq*. with respect to purchases of Granulated Sugar in Hawaii by the Class Members and/or purchased by Hawaii residents.

168.    By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in Hawaii.

169.    Defendants' combination or conspiracy had the following effects: (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout Hawaii; (3) Plaintiff and the Class

Members were deprived of free and open competition; and (4) Plaintiff and the Class

Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

170.    Defendants' unlawful conduct substantially affected Hawaii's trade and

commerce.

171.    As a direct and proximate cause of Defendants' unlawful conduct,

Plaintiff and the Class Members have been injured and are threatened with further

injury.

172.    By reason of the foregoing, Plaintiff and the Class Members are entitled

to seek all forms of relief available under Haw. Rev. Stat. Ann. § 480-1, *et seq*.

**TENTH CLAIM FOR RELIEF**
**Violation of 740 Ill. Comp. Stat. Ann. 10/3(1),** *et seq.*

173.    Plaintiff incorporates the Complaint's allegations by reference and re-

alleges them as though fully set forth herein.

174.    During the Class Period, Defendants entered into an unlawful

agreement in restraint of trade in violation of 740 Ill. Comp. Stat. Ann. 10/3(1), *et seq.*

with respect to purchases of Granulated Sugar in Illinois by the Class Members and/or

purchased by Illinois residents.

175.    By engaging in the foregoing conduct, Defendants intentionally and

wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the

Granulated Sugar market, a substantial part of which occurred in Illinois.

176.    Defendants' combination or conspiracy had the following effects:  (1)

Granulated Sugar price competition was restrained, suppressed, and eliminated

throughout Illinois; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout Illinois; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

177.    Defendants' unlawful conduct substantially affected Illinois's trade and commerce.

178.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

179.    By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under 740 Ill. Comp. Stat. Ann. 10/3(1), *et seq*.

**ELEVENTH CLAIM FOR RELIEF**
**Violation of Iowa Code § 553.1, *et seq*.**

180.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

181.    During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of Iowa Code § 553.1, *et seq*. with respect to purchases of Granulated Sugar in Iowa by the Class Members and/or purchased by Iowa residents.

182.    By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in Iowa.

183.    Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout Iowa; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

184.    Defendants' unlawful conduct substantially affected Iowa's trade and commerce.

185.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

186.    By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under Iowa Code § 553.1, *et seq.*

## TWELFTH CLAIM FOR RELIEF
### Violation of Kan. Stat. Ann. § 50-101, *et seq*.

187.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

188.    During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of Kan. Stat. Ann. § 50-101, *et seq*. with respect to purchases of Granulated Sugar in Kansas by the Class Members and/or purchased by Kansas residents.

189.     By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in Kansas.

190.     Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout Kansas; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

191.     Defendants' unlawful conduct substantially affected Kansas's trade and commerce.

192.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

193.     By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under Kan. Stat. Ann. § 50-101, *et seq*.

**THIRTEENTH CLAIM FOR RELIEF**
**Violation of Me. Rev. Stat. Tit. 10, § 1101, *et seq*.**

194.     Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

195.     During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of Me. Rev. Stat. Tit. 10, § 1101, *et seq*.

with respect to purchases of Granulated Sugar in Maine by the Class Members and/or purchased by Maine residents.

196.     By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in Maine.

197.     Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Maine; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Maine; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

198.     Defendants' unlawful conduct substantially affected Maine's trade and commerce.

199.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

200.     By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under Me. Rev. Stat. Tit. 10, § 1101, *et seq*.

## FOURTEENTH CLAIM FOR RELIEF
### Violation of Md. Code, Com. Law § 11-201, *et seq*.

201.     Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

202.     During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of Md. Code, Com. Law § 11-201, *et seq*. with respect to purchases of Granulated Sugar in Maryland by the Class Members and/or purchased by Maryland  residents.

203.     By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in Maryland.

204.     Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Maryland; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout Maryland; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

205.     Defendants' unlawful conduct substantially affected Maryland's trade and commerce.

206.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

207.     By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under Md. Code, Com. Law § 11-201, *et seq*.

## FIFTEENTH CLAIM FOR RELIEF
### Violation of Mich. Comp. Laws Ann. § 445.772, *et seq*.

208.     Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

209.     During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of Mich. Comp. Laws Ann. § 445.772, *et seq*. with respect to purchases of Granulated Sugar in Michigan by the Class Members and/or purchased by Michigan residents.

210.     By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in Michigan.

211.     Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout Michigan; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

212.     Defendants' unlawful conduct substantially affected Michigan's trade and commerce.

213.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

214.     By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under Mich. Comp. Laws Ann. § 445.772, *et seq*.

**SIXTEENTH CLAIM FOR RELIEF**
**Violation of Minn. Stat. § 325D.49, *et seq*.**

215.     Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

216.     During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of Minn. Stat. § 325D.49, *et seq*. with respect to purchases of Granulated Sugar in Minnesota by the Class Members and/or purchased by Minnesota residents.

217.      By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in Minnesota.

218.     Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout Minnesota; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

219.     Defendants' unlawful conduct substantially affected Minnesota's trade and commerce.

220.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

221.     By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under Minn. Stat. § 325D.49, *et seq*.

### SEVENTEENTH CLAIM FOR RELIEF
### Violation of Miss. Code Ann. § 75-21-3, *et seq*.

222.     Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

223.     During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of Miss. Code Ann. § 75-21-3, *et seq*. with respect to purchases of Granulated Sugar in Mississippi by the Class Members and/or purchased by Mississippi residents.

224.     By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in Mississippi.

225.     Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout Mississippi; (3) Plaintiff and the Class Members was deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

226.    Defendants' unlawful conduct substantially affected Mississippi's trade and commerce.

227.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

228.    By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under Miss. Code Ann. § 75-21-3, *et seq*.

## EIGHTEENTH CLAIM FOR RELIEF
### Violation of Neb. Rev. Stat. Ann. § 59-801, *et seq*.

229.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

230.    During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of Neb. Rev. Stat. Ann. § 59-801, *et seq*. with respect to purchases of Granulated Sugar in Nebraska by the Class Members and/or purchased by Nebraska residents.

231.    By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in Nebraska.

232.    Defendants' combination or conspiracy had the following effects: (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Nebraska; (3) Plaintiff and the Class

Members were deprived of free and open competition; and (4) Plaintiff and the Class

Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

233.   Defendants' unlawful conduct substantially affected Nebraska's trade

and commerce.

234.   As a direct and proximate cause of Defendants' unlawful conduct,

Plaintiff and the Class Members have been injured and are threatened with further

injury.

235.   By reason of the foregoing, Plaintiff and the Class Members are entitled

to seek all forms of relief available under Neb. Rev. Stat. Ann. § 59-801, *et seq*.

<u>**NINETEENTH CLAIM FOR RELIEF**</u>
**Violation of Nev. Rev. Stat. Ann. § 598A.060, *et seq*.**

236.   Plaintiff incorporates and re-alleges each and every allegation in the

preceding paragraphs, as though fully set forth herein.

237.   During the Class Period, Defendants entered into an unlawful

agreement in restraint of trade in violation of Nev. Rev. Stat. Ann. § 598A.060, *et seq*.

with respect to purchases of Granulated Sugar in Nevada by the Class Members and/or

purchased by Nevada residents.

238.   By engaging in the foregoing conduct, Defendants intentionally and

wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the

Granulated Sugar market, a substantial part of which occurred in Nevada.

239.   Defendants' combination or conspiracy had the following effects:  (1)

Granulated Sugar price competition was restrained, suppressed, and eliminated

throughout Nevada; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout Nevada; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

240.    Defendants' unlawful conduct substantially affected Nevada's trade and commerce.

241.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured are threatened with further injury.

242.    By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under Nev. Rev. Stat. Ann. § 598A.060, *et seq*.

**TWENTIETH CLAIM FOR RELIEF**
**Violation of N.H. Rev. Stat. Ann. § 356:2, *et seq*.**

243.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

244.    During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of N.H. Rev. Stat. Ann. § 356:2, *et seq*. with respect to purchases of Granulated Sugar in New Hampshire by the Class Members and/or purchased by New Hampshire residents.

245.    By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in New Hampshire.

246.     Defendants' combination or conspiracy had the following effects:  (1)
Granulated Sugar price competition was restrained, suppressed, and eliminated
throughout New Hampshire; (2) Granulated Sugar prices were raised, fixed, maintained,
and stabilized at artificially high prices throughout New Hampshire; (3) Plaintiff and the
Class Members were deprived of free and open competition; and (4) Plaintiff and the
Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

247.     Defendants' unlawful conduct substantially affected New Hampshire's
trade and commerce.

248.     As a direct and proximate cause of Defendants' unlawful conduct,
Plaintiff and the Class Members have been injured and are threatened with further
injury.

249.     By reason of the foregoing, Plaintiff and the Class Members are entitled
to seek all forms of relief available under N.H. Rev. Stat. Ann. § 356:2, *et seq*.

## TWENTY-FIRST CLAIM FOR RELIEF
### Violation of N.M. Stat. Ann. § 57-12-1, *et seq*.

250.     Plaintiff incorporates and re-alleges each and every allegation in the
preceding paragraphs, as though fully set forth herein.

251.     During the Class Period, Defendants entered into an unlawful
agreement in restraint of trade in violation of N.M. Stat. Ann. § 57-12-1, *et seq*. with
respect to purchases of Granulated Sugar in New Mexico by the Class Members and/or
purchased by New Mexico residents.

252.     By engaging in the foregoing conduct, Defendants intentionally and

wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the

Granulated Sugar market, a substantial part of which occurred in New Mexico.

253.    Defendants' combination or conspiracy had the following effects:  (1)

Granulated Sugar price competition was restrained, suppressed, and eliminated

throughout New Mexico; (2) Granulated Sugar prices were raised, fixed, maintained,

and/or stabilized at artificially high prices throughout New Mexico; (3) Plaintiff and the

Class Members were deprived of free and open competition; and (4) Plaintiff and the

Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

254.    Defendants' unlawful conduct substantially affected New Mexico's

trade and commerce.

255.    As a direct and proximate cause of Defendants' unlawful conduct,

Plaintiff and the Class Members have been injured and are threatened with further

injury.

256.    By reason of the foregoing, Plaintiff and the Class Members are entitled

to seek all forms of relief available under N.M. Stat. Ann. § 57-12-1, *et seq.*

### TWENTY-SECOND CLAIM FOR RELIEF
### Violation of N.Y. Gen. Bus. Law § 349, *et seq.*

257.    Plaintiff incorporates and re-alleges each and every allegation in the

preceding paragraphs, as though fully set forth herein.

258.    During the Class Period, Defendants entered into an unlawful

agreement in restraint of trade in violation of N.Y. Gen. Bus. Law § 349, *et seq.* with

respect to purchases of Granulated Sugar in New York by the Class Members and/or

purchased by New York residents.

259.    By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in New York.

260.    Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout New York; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout New York; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

261.    Defendants' unlawful conduct substantially affected New York's trade and commerce.

262.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

263.    By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under N.Y. Gen. Bus. Law § 349, *et seq*.

## TWENTY-THIRD CLAIM FOR RELIEF
### Violation of N.C. Gen. Stat. § 75-1.1, *et seq*.

264.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

265.    During the Class Period, Defendants entered into an unlawful

agreement in restraint of trade in violation of N.C. Gen. Stat. § 75-1.1, *et seq*. with respect to purchases of Granulated Sugar in North Carolina by the Class Members and/or purchased by North Carolina residents.

266.    By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in North Carolina.

267.    Defendants' combination or conspiracy had the following effects: (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout North Carolina; (3) Plaintiff and the Class Members was deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

268.    Defendants' unlawful conduct substantially affected North Carolina's trade and commerce.

269.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

270.    By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under N.C. Gen. Stat. § 75-1.1, *et seq*.

## TWENTY-FOURTH CLAIM FOR RELIEF
**Violation of N.D. Cent. Code § 51-08.1, *et seq.***

271.     Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

272.     During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of N.D. Cent. Code § 51-08.1, *et seq*. with respect to purchases of Granulated Sugar in North Dakota by the Class Members and/or purchased by North Dakota residents.

273.     By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in North Dakota.

274.     Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout North Dakota; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

275.     Defendants' unlawful conduct substantially affected North Dakota's trade and commerce.

276.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

277.     By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under N.D. Cent. Code § 51-08.1, *et seq.*

**TWENTY-FIFTH CLAIM FOR RELIEF**
**Violation of Or. Rev. Stat. § 646.705, *et seq.***

278.     Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

279.     During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of OR. Rev. Stat. § 646.705, *et seq.* with respect to purchases of Granulated Sugar in Oregon by the Class Members and/or purchased by Oregon residents.

280.     By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in Oregon.

281.     Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout Oregon; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

282.     Defendants' unlawful conduct substantially affected Oregon's trade and commerce.

283.     As a direct and proximate cause of Defendants' unlawful conduct,

Plaintiff and the Class Members have been injured and are threatened with further injury.

284.    By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under OR. Rev. Stat. § 646.705, *et seq.*

**TWENTY-SIXTH CLAIM FOR RELIEF**
**Violation of R.I. Gen. Laws § 6-36-1, *et seq.***

285.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

286.    During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of R.I. Gen. Laws § 6-36-1, *et seq.* with respect to purchases of Granulated Sugar in Rhode Island by the Class Members and/or purchased by Rhode Island residents.

287.    By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in Rhode Island.

288.    Defendants' combination or conspiracy had the following effects: (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout Rhode Island; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

289.    Defendants' unlawful conduct substantially affected Rhode Island's

trade and commerce.

290.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

291.    By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under R.I. Gen. Laws § 6-36-1, *et seq.*

**TWENTY-SEVENTH CLAIM FOR RELIEF**
**Violation of S.C. Code Ann. § 39-5-10, *et seq.***

292.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

293.    During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of S.C. Code Ann. § 39-5-10, *et seq.* with respect to purchases of Granulated Sugar in South Carolina by the Class Members and/or purchased by South Carolina residents.

294.    By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in South Carolina.

295.    Defendants' combination or conspiracy had the following effects: (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) Granulated Sugar prices were raised, fixed, maintained, and stabilized at artificially high prices throughout South Carolina; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the

Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

296.     Defendants' unlawful conduct substantially affected South Carolina's trade and commerce.

297.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

298.     By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under S.C. Code Ann. § 39-5-10, *et seq*.

### TWENTY-EIGHTH CLAIM FOR RELIEF
### Violation of S.D. Codified Laws § 37-1-3.1, *et seq*.

299.     Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

300.     During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of S.D. Codified Laws § 37-1-3.1, *et seq*. with respect to purchases of Granulated Sugar in South Dakota by the Class Members and/or purchased by South Dakota residents.

301.     By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in South Dakota.

302.     Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Granulated Sugar prices were raised, fixed, maintained,

and/or stabilized at artificially high prices throughout South Dakota; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

303.　　Defendants' unlawful conduct substantially affected South Dakota's trade and commerce.

304.　　As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured in their business or property and are threatened with further injury.

305.　　By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under S.D. Codified Laws § 37-1-3.1, *et seq*.

**TWENTY-NINTH CLAIM FOR RELIEF**
**Violation of Tenn. Code, § 47-25-101, *et seq*.**

306.　　Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

307.　　During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of Tenn. Code, § 47-25-101, *et seq*. with respect to purchases of Granulated Sugar in Tennessee by the Class Members and/or purchased by Tennessee residents.

308.　　By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in Tennessee.

309.　　Defendants' combination or conspiracy had the following effects:  (1)

Granulated Sugar price competition was restrained, suppressed, and eliminated

throughout Tennessee; (2) Granulated Sugar prices were raised, fixed, maintained,

and/or stabilized at artificially high prices throughout Tennessee; (3) Plaintiff and the

Class Members were deprived of free and open competition; and (4) Plaintiff and the

Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

310.    Defendants' unlawful conduct substantially affected Tennessee's trade

and commerce.

311.    As a direct and proximate cause of Defendants' unlawful conduct,

Plaintiff and the Class Members have been injured and are threatened with further

injury.

312.    By reason of the foregoing, Plaintiff and the Class Members are entitled

to seek all forms of relief available under Tenn. Code, § 47-25-101, *et seq*.

**THIRTIETH CLAIM FOR RELIEF**
**Violation of Utah Code Ann. § 76-10-911, *et seq*.**

313.    Plaintiff incorporates and re-alleges each and every allegation in the

preceding paragraphs, as though fully set forth herein.

314.    During the Class Period, Defendants entered into an unlawful

agreement in restraint of trade in violation of Utah Code Ann. § 76-10-911, *et seq*. with

respect to purchases of Granulated Sugar in Utah by the Class Members and/or

purchased by Utah residents.

315.    By engaging in the foregoing conduct, Defendants intentionally and

wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the

Granulated Sugar market, a substantial part of which occurred in Utah.

316.    Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Utah; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout Utah; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

317.    Defendants' unlawful conduct substantially affected Utah's trade and commerce.

318.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

319.    By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under Utah Code Ann. § 76-10-911, *et seq.*

## THIRTY-FIRST CLAIM FOR RELIEF
### Violation of Vt. Stat. Ann. Tit. 9, § 2453, *et seq.*

320.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

321.    During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of Vt. Stat. Ann. Tit. 9, § 2453, *et seq.* with respect to purchases of Granulated Sugar in Vermont by the Class Members and/or purchased by Vermont residents.

322.    By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in Vermont.

323.    Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout Vermont; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

324.    Defendants' unlawful conduct substantially affected Vermont's trade and commerce.

325.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

326.    By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under Vt. Stat. Ann. Tit. 9, § 2453, *et seq*.

### THIRTY-SECOND CLAIM FOR RELIEF
### Violation of W. Va. Code § 46A-6-101, *et seq*.

327.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

328.    During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of W. Va. Code § 46A-6-101, *et seq*. with

respect to purchases of Granulated Sugar in West Virginia by the Class Members and/or purchased by West Virginia residents.

329.    By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in West Virginia.

330.    Defendants' combination or conspiracy had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout West Virginia; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

331.    Defendants' unlawful conduct substantially affected West Virginia's trade and commerce.

332.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured in their business or property and are threatened with further injury.

333.    By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under W. Va. Code § 46A-6-101, *et seq*.

### THIRTY-THIRD CLAIM FOR RELIEF
#### Violation of Wis. Stat. Ann. § 133.01(1), *et seq*.

334.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

335.     During the Class Period, Defendants entered into an unlawful agreement in restraint of trade in violation of Wis. Stat. Ann. § 133.01(1), *et seq*. with respect to purchases of Granulated Sugar in Wisconsin by the Class Members and/or purchased by Wisconsin residents.

336.     By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in the Granulated Sugar market, a substantial part of which occurred in Wisconsin.

337.     Defendants' combination or conspiracy had the following effects: (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Granulated Sugar prices were raised, fixed, maintained, and/or stabilized at artificially high prices throughout Wisconsin; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

338.     Defendants' unlawful conduct substantially affected Wisconsin's trade and commerce.

339.     As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

340.     By reason of the foregoing, Plaintiff and the Class Members are entitled to seek all forms of relief available under Wis. Stat. Ann. § 133.01(1), *et seq*.

### THIRTY-FOURTH CLAIM FOR RELIEF
#### Violation of Ariz. Rev. Stat. § 44-1521, *et seq.*

341.     Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

342.     Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Ariz. Rev. Stat. § 44-1521, *et seq*. by engaging in the acts and practices specified above.

343.     Defendants' unlawful conduct was willful and substantially affected Arizona's trade and commerce.

344.     Defendants' unlawful conduct had the following effects: (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Arizona; (2) Granulated Sugar prices were, fixed, maintained, and/or stabilized at artificially high levels throughout Arizona; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

345.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

### THIRTY-FIFTH CLAIM FOR RELIEF
#### Violation of Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL")

346.     Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

347.     Defendants have engaged in unfair competition or unfair,

unconscionable, deceptive or fraudulent acts or practices in violation of the UCL by engaging in the acts and practices specified above.

348.    Defendants' unlawful conduct was willful and substantially affected California's trade and commerce.

349.    Defendants' unlawful conduct had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout California; (2) Granulated Sugar prices were, fixed, maintained, and/or stabilized at artificially high levels throughout California; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

350.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

### THIRTY-SIXTH CLAIM FOR RELIEF
**Violation of Colo. Rev. Stat. § 6-1-101, *et seq.***

351.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

352.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Colo. Rev. Stat. § 6-1-101, *et seq.* by engaging in the acts and practices specified above.

353.    Defendants' unlawful conduct was willful and substantially affected Colorado's trade and commerce.

354.    Defendants' unlawful conduct had the following effects:  (1) Granulated

Sugar price competition was restrained, suppressed, and eliminated throughout

Colorado; (2) Granulated Sugar prices were, fixed, maintained, and/or stabilized at

artificially high levels throughout Colorado; (3) Plaintiff and the Class Members were

deprived of free and open competition; and (4) Plaintiff and the Class Members paid

supra-competitive, artificially inflated prices for Granulated Sugar.

355.    As a direct and proximate result of Defendants' unlawful conduct,

Plaintiff and the Class Members have been injured and are threatened with further

injury.

### THIRTY-SEVENTH CLAIM FOR RELIEF
**Violation of D.C. Code § 28-3901,** *et seq.*

356.    Plaintiff incorporates and re-alleges each and every allegation in the

preceding paragraphs, as though fully set forth herein.

357.    Defendants have engaged in unfair competition or unfair,

unconscionable, deceptive or fraudulent acts or practices in violation of D.C. Code §

28-3901, *et seq.* by engaging in the acts and practices specified above.

358.    Defendants' unlawful conduct was willful and substantially affected

District of Columbia's trade and commerce.

359.    Defendants' unlawful conduct had the following effects: (1) Granulated

Sugar price competition was restrained, suppressed, and eliminated throughout the

District of Columbia; (2) Granulated Sugar prices were, fixed, maintained, and/or

stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff

and the Class Members were deprived of free and open competition; and (4) Plaintiff

and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

360.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

### THIRTY-EIGHTH CLAIM FOR RELIEF
#### Violation of Fla. Stat. § 501.201 *et seq.*

361.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

362.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of Fla. Stat. § 501.201 *et seq.* by engaging in the acts and practices specified above.

363.    Defendants' unlawful conduct was willful and substantially affected Florida's trade and commerce.

364.    Defendants' unlawful conduct had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Florida; (2) Granulated Sugar prices were, fixed, maintained, and/or stabilized at artificially high levels throughout Florida; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

365.    As a direct and proximate result of Defendants' unlawful conduct Plaintiff and the Class Members have been injured and are threatened with further

injury.

## THIRTY-NINTH CLAIM FOR RELIEF
### Violation of Hawaii Rev. Stats. Ann. § 480-1, *et seq.*

366.　　Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

367.　　Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Hawaii Rev. Stats. Ann. § 480- 1, *et seq*. by engaging in the acts and practices specified above.

368.　　Defendants' unlawful conduct was willful and substantially affected Hawaii's trade and commerce.

369.　　Defendants' unlawful conduct had the following effects:　(1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Granulated Sugar prices were, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

370.　　As a direct and proximate result of Defendants' unlawful conduct Plaintiff and the Class Members have been injured and are threatened with further injury.

## FORTIETH CLAIM FOR RELIEF
### Violation of 815 Ill. Comp. Stat. Ann. 505/10A, *et seq.*

371.　　Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

372.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of 815 Ill. Comp. Stat. Ann. 505/10A, *et seq.* by engaging in the acts and practices specified above.

373.    Defendants' unlawful conduct was willful and substantially affected Illinois's trade and commerce.

374.    Defendants' unlawful conduct had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Illinois; (2) Granulated Sugar prices were, fixed, maintained, and/or stabilized at artificially high levels throughout Illinois; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

375.    As a direct and proximate result of Defendants' unlawful conduct Plaintiff and the Class Members have been injured and are threatened with further injury.

### FORTY-FIRST CLAIM FOR RELIEF
#### Violation of Mich. Comp. Laws § 445.903, *et seq.*

376.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

377.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Mich. Comp. Laws § 445.903, *et seq.* by engaging in the acts and practices specified above.

378.    Defendants' unlawful conduct was willful and substantially affected

Michigan's trade and commerce.

379.    Defendants' unlawful conduct had the following effects: (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Granulated Sugar prices were, fixed, maintained, and/or stabilized at artificially high levels throughout Michigan; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

380.    As a direct and proximate result of Defendants' unlawful conduct Plaintiff and the Class Members have been injured and are threatened with further injury.

## FORTY-SECOND CLAIM FOR RELIEF
### Violation of Minn. Stat. § 325d.43-48, *et seq.*

381.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

382.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of Minn. Stat. § 325d.43-48, *et seq.* by engaging in the acts and practices specified above.

383.    Defendants' unlawful conduct was willful and substantially affected Minnesota's trade and commerce.

384.    Defendants' unlawful conduct had the following effects: (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Granulated Sugar prices were, fixed, maintained, and/or stabilized at

artificially high levels throughout Minnesota; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

385.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

**FORTY-THIRD CLAIM FOR RELIEF**
**Violation of Neb. Rev. Stat. § 59-1601, *et seq*.**

386.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

387.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq*. by engaging in the acts and practices specified above.

388.    Defendants' unlawful conduct was willful and substantially affected Nebraska's trade and commerce.

389.    Defendants' unlawful conduct had the following effects: (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Granulated Sugar prices were, fixed, maintained, and/or stabilized at artificially high levels throughout Nebraska; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

390.    As a direct and proximate result of Defendants' unlawful conduct,

Plaintiff and the Class Members have been injured and are threatened with further injury.

## FORTY-FOURTH CLAIM FOR RELIEF
### Violation of Nev. Rev. Stat. § 598.0903, *et seq.*

391.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

392.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the Nev. Rev. Stat. § 598.0903, *et seq.* by engaging in the acts and practices specified above.

393.    Defendants' unlawful conduct was willful and substantially affected Nevada's trade and commerce.

394.    Defendants' unlawful conduct had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Granulated Sugar prices were, fixed, maintained, and/or stabilized at artificially high levels throughout Nevada; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

395.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

## FORTY-FIFTH CLAIM FOR RELIEF
### Violation of N.H. Rev. Stat. § 358-A:1, *et seq.*

396.    Plaintiff incorporates and re-alleges each and every allegation in the

preceding paragraphs, as though fully set forth herein.

397.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the N.H. Rev. Stat. § 358-A:1, *et seq.* by engaging in the acts and practices specified above.

398.    Defendants' unlawful conduct was willful and substantially affected New Hampshire's trade and commerce.

399.    Defendants' unlawful conduct had the following effects: (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Granulated Sugar prices were, fixed, maintained, and/or stabilized at artificially high levels throughout New Hampshire; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra-competitive, artificially inflated prices for Granulated Sugar.

400.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

**FORTY-SIXTH CLAIM FOR RELIEF**
**Violation of N.M. Stat. § 57-12-1, *et seq.***

401.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

402.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the N.M. Stat. § 57-12-1, *et seq*. by engaging in the acts and practices specified above.

403.    Defendants' unlawful conduct was willful and substantially affected New Mexico's trade and commerce.

404.    Defendants' unlawful conduct had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Granulated Sugar prices were, fixed, maintained, and/or stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra- competitive, artificially inflated prices for Granulated Sugar.

405.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

### FORTY-SEVENTH CLAIM FOR RELIEF
### Violation of Or. Rev. Stat. § 646.605, *et seq.*

406.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

407.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of Or. Rev. Stat. § 646.605, *et seq.* by engaging in the acts and practices specified above.

408.    Defendants' unlawful conduct was willful and substantially affected Oregon's trade and commerce.

409.    Defendants' unlawful conduct had the following effects: (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout Oregon;

(2) Granulated Sugar prices were, fixed, maintained, and/or stabilized at artificially high levels throughout Oregon; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supracompetitive, artificially inflated prices for Granulated Sugar.

410.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

## FORTY-EIGHTH CLAIM FOR RELIEF
### Violation of R.I. Gen. Laws § 6-13.1-1, *et seq.*

411.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

412.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of R.I. Gen. Laws § 6-13.1-1, *et seq*. by engaging in the acts and practices specified above.

413.    Defendants' unlawful conduct was willful and substantially affected Rhode Island's trade and commerce.

414.    Defendants' unlawful conduct had the following effects:  (1) Granulated Sugar price competition was restrained, suppressed, and/or eliminated throughout Rhode Island; (2) Granulated Sugar prices were, fixed, maintained, and/or stabilized at artificially high levels throughout Rhode Island; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra- competitive, artificially inflated prices for Granulated Sugar.

415.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Class Members have been injured and are threatened with further injury.

**FORTY-NINTH CLAIM FOR RELIEF**
**Violation of S.D. Codified Laws § 37-24-1, *et seq*.**

416.    Plaintiff incorporates and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

417.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of S.D. Codified Laws § 37-24-1, *et seq.* by engaging in the acts and practices specified above.

418.    Defendants' unlawful conduct was willful and substantially affected South Dakota's trade and commerce.

419.    Defendants' unlawful conduct had the following effects: (1) Granulated Sugar price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Granulated Sugar prices were, fixed, maintained, and/or stabilized at artificially high levels throughout South Dakota; (3) Plaintiff and the Class Members were deprived of free and open competition; and (4) Plaintiff and the Class Members paid supra- competitive, artificially inflated prices for Granulated Sugar.

420.    As a direct and proximate result of Defendants' unlawful conduct Plaintiff and the Class Members have been injured and are threatened with further injury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on its behalf and on behalf of the Class Members, request that the Court grant the following relief:

(a)  Certify this lawsuit as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure and designate Plaintiff as the Class representative and Cafferty Clobes Meriwether & Sprengel LLP as Class Counsel;

(b)  That the unlawful conduct, conspiracy, or combination alleged herein be adjudged and decreed:  (i) an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; (ii) a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; and (iii) an unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein;

(c)  Enter judgment for Plaintiff and the Class Members against Defendants for treble damages sustained by them as a result of Defendants' unlawful conduct, including reasonable attorneys' fees, as permitted by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26;

(d)  Permanently enjoin Defendants from facilitating the exchange of sensitive information;

(e)  Award Plaintiff reasonable attorneys' fees and costs of suit; and

(f)  Grant such other and further relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands

a jury trial as to all issues.


Date:  May 22, 2024                         Respectfully submitted,


                                             */s/ Heidi M. Silton*
                                             Heidi M. Silton (MN #025759X)
                                             Jessica N. Servais (MN #0326744)
                                             Joseph C. Bourne (MN #0389922)
                                             **LOCKRIDGE GRINDAL NAUEN PLLP**
                                             100 Washington Avenue South, Suite 2200
                                             Minneapolis, MN 55401
                                             Tel:    (612) 339-6900
                                             Fax:    (612) 339-0981
                                             hmsilton@locklaw.com
                                             jnservais@locklaw.com
                                             jcbourne@locklaw.com


                                             Bryan L. Clobes (pro hac vice forthcoming)
                                             Ellen Meriwether (pro hac vice forthcoming)
                                             Daniel J. Herrera (pro hac vice forthcoming)
                                             Mohammed Rathur (pro hac vice forthcoming)
                                             **Cafferty Clobes Meriwether & Sprengel
                                             LLP**
                                             135 South LaSalle Street, Suite 3210
                                             Chicago, IL  60603
                                             T:  (312) 782-4880
                                             bclobes@caffertyclobes.com
                                             emeriwether@caffertyclobes.com
                                             dherrera@caffertyclobes.com
                                             mrathur@caffertyclobes.com

                                             *Counsel for Plaintiff and the Proposed Class*